UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MICHAEL CRISSWELL, individually and on behalf of a class of similarly situated individuals, | : No. _____ <br> : <br> : FILED STAMP: SEPTEMBER 10, 2008 |
| Plaintiff, | : 08CV5184 |
| vs. | : JUDGE GUZMAN <br> : MAG. JUDGE COLE |
| MICROSOFT CORPORATION, a Washington corporation, | : J. N. <br> : <br> : |
| Defendant. | : <br> : |

## NOTICE OF REMOVAL

Pursuant to 28 U.S.C. § 1446, Defendant, Microsoft Corporation ("Microsoft"), hereby removes the above-captioned action from the Circuit Court of Cook County, Illinois, Chancery Division, to the United States District Court, Northern District of Illinois, Eastern Division. In support of its Notice of Removal, Microsoft states as follows:

1.      On August 8, 2008, Plaintiff, Michael Crisswell, commenced this action in the Circuit Court of Cook County, Illinois, Chancery Division by filing a Class Action Complaint ("Complaint" or "Compl.") captioned *Michael Crisswell, individually and on behalf of a class of similarly situated individuals vs. Microsoft Corporation*, No. 08 CH 28929.

2.      Plaintiff served a copy of the Complaint on Microsoft on August 11, 2008. This Notice of Removal is therefore timely filed under 28 U.S.C. § 1446(b).

3.      A true and correct copy of the Summons and Complaint, which constitutes "all process, pleadings, and orders served upon" Microsoft, 28 U.S.C. § 1446(b), is attached hereto as Exhibit A.

4. A copy of this Notice of Removal is being filed with the Clerk of the Circuit Court of Cook County, Illinois, and is being served on counsel of record pursuant to 28 U.S.C. §§ 1446(a) & (d).

5. Plaintiff's claims relate to Microsoft's "Windows Live" service, specifically text messages that Windows Live sends to wireless devices such as cellular telephones. Plaintiff asserts at the outset of his Complaint that he seeks to "stop Defendant's practice of transmitting unauthorized text messages to the wireless devices of consumers nationwide, and to obtain redress for all persons injured by its conduct." Compl. at 1. Plaintiff's claims rest principally upon the following three factual allegations.

6. First, Plaintiff alleges that Microsoft allows users of its Windows Live service "to input wireless telephone numbers into Windows Live email accounts so that communications received by the [Windows Live] account will be transmitted to users' wireless telephones as Short Message Service text messages ("SMS" or "text" messages)." Compl. ¶ 3.

7. Second, Plaintiff alleges that "Windows Live will send text messages to whatever wireless phone number(s) a particular user enters, without regard to whether the recipient of such text messages wants to receive (and incur charges for) them." Compl. ¶ 4.

8. Third, Plaintiff alleges that:

> Windows Live users can configure their accounts with special filters so that Windows Live will send text messages/mobile alerts to the wireless telephones of virtually any wireless subscriber. Windows Live users can program these filters so that, for instance, email messages received from a particular source, or email messages containing certain names or keywords, are transmitted automatically as text messages from the user's Windows Live email account to the telephone number inputted by the user. . . . Moreover, Microsoft either refuses to tell recipients how to opt-out of receiving future text messages or has failed to implement an effective system that allows wireless subscribers to opt their phone numbers out from Windows Live text messages.

Compl. ¶ 5.

9. Plaintiff claims that as a result of these alleged facts, "Windows Live compromises recipients' privacy rights [by] bombard[ing them] with invitations for parties by people they do not know, and other often obscure, graphic and adult-oriented messages [that] come during all times of the day and night, and because the senders are often hard to identify, can be seen as intimidating, unsettling and even threatening." Compl. ¶ 6. In addition, Plaintiff claims that "recipients of these text messages invariably pay to receive these text messages, even though they are completely unauthorized and unwelcome." Compl. ¶ 7.

10. Plaintiff asserts claims for tortious interference with a contract (Count I), unjust enrichment/restitution (Count II), trespass to chattels (Count III), invasion of privacy (Count IV), computer tampering in violation of 720 ILCS 5/16D-3 (Count V), and violation of the Illinois Consumer Fraud and Deceptive Business Practices Act (Count VI). Compl. ¶¶ 37-66.

11. Plaintiff seeks to litigate his claims on behalf of a "Class" and "Sub-Class" defined as follows:

> a. A Class ("Class") consisting of all wireless telephone subscribers in the nation who suffered losses or damages as result of incurring charges on their cellular telephone bills from or on behalf of Defendant Microsoft Inc's. [sic] Window [sic] Live not authorized by the subscriber; provided, however, that the following are excluded from this proposed Class: (i) the Defendant, and (ii) any employee of a defendant.
>
> b. A Sub-Class ("Sub-Class") consisting of all members of the Class residing in the State of Illinois.

Compl. ¶ 29.

## BASIS OF FEDERAL JURISDICTION UNDER CLASS ACTION FAIRNESS ACT

12. This action is removable to this Court because federal diversity jurisdiction, 28 U.S.C. § 1332, exists over Plaintiff's claims pursuant to the Class Action Fairness Act of 2005,

Pub. L. 109-2, 119 Stat. 4 (2005) ("CAFA"), codified in various sections of Title 28 of the United States Code including 28 U.S.C. § 1332(d) and 28 U.S.C. § 1453.

13. CAFA became effective on February 18, 2005, and applies to any civil action commenced on or after that date. This action was commenced on August 11, 2008 and CAFA therefore applies to it.

14. Congress enacted CAFA to expand federal jurisdiction over proposed class actions. CAFA provides that a class action against a non-governmental entity may be removed to federal court if: (1) the number of proposed class members is not less than 100; (2) any member of the proposed plaintiff class is a citizen of a state different from any defendant; and (3) the aggregate amount in controversy exceeds $5 million, exclusive of interest and costs. *See* 28 U.S.C. §§ 1332(d)(2), 1332(d)(5) & 1453(b). As set forth below, all of the requirements for removal are satisfied here.

### Class Size

15. CAFA's first requirement, that the proposed class contain at least 100 members, 28 U.S.C. § 1332(d)(5), is satisfied here. Plaintiff alleges that he seeks to represent "all wireless telephone subscribers in the nation who suffered losses or damages as a result of incurring charges on their cellular telephone bills from or on behalf of Defendants Microsoft Inc.'s. [sic] Window [sic] Live not authorized by the subscriber . . . ." Compl. ¶ 29. Plaintiff further alleges that "every month one can expect Windows Live to begin transmitting text messages to hundreds or thousands more wireless subscribers whose numbers were previously recycled and who have not consented to receiving text messages from Windows Live." Compl. ¶ 19. Plaintiff has thus alleged that the number of proposed class members he seeks to represent is at least 100.

## Minimal Diversity of Citizenship

16. CAFA's second requirement, that any one member of the proposed class be a citizen of a state different from any defendant, 28 U.S.C. § 1332(d)(2), is also satisfied here. Plaintiff alleges that he is a citizen of Illinois. Compl. ¶ 9. Plaintiff further alleges that Microsoft is a Washington corporation with its corporate headquarters in Washington, Compl. ¶ 10, and therefore Microsoft is a citizen of Washington. Diversity of citizenship thus exists between at least one proposed class member and the defendant.

17. The complete diversity of citizenship between the named parties not only satisfies CAFA's minimal diversity-of-citizenship requirement, but also precludes application of the "local controversy" or "home state" exceptions of 28 U.S.C. §§ 1332(d)(3) and (d)(4).

## Amount in Controversy

18. CAFA's third requirement, that the aggregate amount in controversy exceed $5 million, exclusive of interest and costs, 28 U.S.C. § 1332(d)(2), is satisfied as well.

19. In his Complaint, Plaintiff states that he "makes no specific allegation that the amount in controversy (including requests for attorneys' fees, injunctive relief, etc.) exceeds any specific amount, let alone $5,000.000. When a Plaintiff refuses to allege the amount in controversy, "an inference arises that the plaintiff believes her claim to be worth more than the jurisdictional amount." *Epstein v. Target Corp.*, No. 06-C-7035, 2007 WL 551552, at *2 (N.D. Ill. Feb. 15, 2007) (citing *Oshana v. Coca-Cola Co.*, 472 F.3d 506 (7th Cir. 2006); *Workman v. United Parcel Service*, 234 F.3d 998, 1000 (7th Cir. 2000)). The Court may therefore infer that Plaintiff believes that the amount in controversy is at least $5,000,000.

20. Although Microsoft denies liability and damages, it is evident that Plaintiff purports to allege claims for himself and the proposed class for monetary relief that if granted would, in the aggregate, exceed CAFA's $5 million requirement.

## The Amount in Controversy on Plaintiff's Tortious Interference Claim Exceeds $5 Million

21. In Count I Plaintiff purports to assert a claim for tortious interference with a contract. Compl. ¶¶ 37-41.

22. Plaintiff alleges that "Defendant intentionally interfered with [the proposed class members'] contractual relationships [with their wireless carriers] through improper motives and/or means by knowingly and/or recklessly continually causing unauthorized charges to be placed on the cellular telephone bills of cellular telephone owners across the nation." Compl. ¶ 40.

23. Plaintiff alleges that the cost for receipt of an SMS text message is "typically around $0.15." Compl. ¶ 16.

24. Microsoft estimates that between May 2005 and August 2008, Windows Live transmitted 332,869,608 SMS text messages to wireless telephone numbers in the United States. Declaration of Amanda Mills ¶ 10 (a true and correct copy of the Declaration of Amanda Mills is attached hereto as Exhibit B).

25. Plaintiff alleges that:

> every month approximately 1.5% of the population of national wireless subscribers terminates service with their carrier and leaves their phone number to be recycled (and given to another wireless subscriber). Thus, every month one can expect Windows Live to begin transmitting text messages to hundreds or thousands more wireless subscribers whose numbers were previously recycled and who have not consented to receiving text messages from Windows Live.

Compl. ¶ 19.

26. Based on Plaintiff's allegation that every month, 1.5% of cell phone numbers will be left to be recycled to different wireless subscribers, it is reasonable to estimate that 1.5% of the SMS text messages sent by Windows Live each month allegedly will be directed to holders of wireless telephone numbers who allegedly did not authorize receipt of those messages. That number would be 1.5% of the estimated 332,869,608 SMS text messages transmitted by Windows Live, or 4,993,044 messages sent to wireless telephone numbers in the United States.

27. Because Plaintiff alleges that the typical SMS text message causes a proposed class member to incur a charge of around $0.15, Compl. ¶ 16, recovery of direct damages on Plaintiff's tortious interference claim would, in the aggregate, amount to $748,956.60 based on 4,993,044 messages, if Plaintiff prevailed.

28. In his claim for relief, Plaintiff also seeks to recover exemplary damages for himself and the proposed class. Compl. at 13 (request for relief ¶ b).

29. Exemplary damages are recoverable for tortious interference with contract. *Cross v. American Country Ins. Co.*, No. 85 C 7931, 1986 WL 13714, *1 (N.D. Ill. Dec. 2, 1986) (citing, *inter alia*, *Hannigan v. Sears, Roebuck and Co.*, 410 F.2d 285 (7th Cir. 1969)).

30. Because the law permits punitive damages to be recovered, "the court has subject matter jurisdiction unless it is clear 'beyond a legal certainty that the plaintiff would under no circumstances be entitled to recover the jurisdictional amount.'" *Cadek v. Great Lakes Dragaway, Inc.*, 58 F.3d 1209, 1212 (7th Cir. 1995) (quoting *Risse v. Woodard*, 491 F.2d 1170, 1173 (7th Cir. 1974)).

31. If punitive damages of $4,251,043.41 were awarded in addition to direct damages of $748,956.60 as described in paragraph 27 above, the $5 million amount in controversy requirement under CAFA would be satisfied.

32. An award of punitive damages of $4,251,043.41 would be 5.68 times the estimated direct damages of $748,956.60, and would not be so large that it would be beyond a legal certainty that Plaintiff could never recover them.

33. Count I of the Complaint therefore alleges an amount in controversy in excess of CAFA $5 million jurisdictional amount.

### The Amount in Controversy Exceeds $5 Million When Plaintiff's Claim Under 720 ILCS 5/16D-3 Is Considered

34. In Count V of his Complaint, Plaintiff purports to assert a claim for "computer tampering, in violation of 720 ILCS 5/16D-3, alleging that Microsoft violated "720 ILCS 5/16D-3(a)(4) by knowingly participating in and/or facilitating the insertion of mobile content into class members' cellular phones without the permission of the cellular phones' respective owners, knowing and/or having reason to believe that the insertion of the unauthorized mobile content will or may cause loss to the users of that cellular phone." Compl. ¶ 58.

35. Plaintiff alleges that Microsoft "automatically" transmits messages received in Windows Live accounts to cellular telephones as SMS text messages. Compl. ¶ 14.

36. Plaintiff further alleges that users of cellular phones are being continuously "bombarded" with allegedly unauthorized SMS text messages, which "come during all times of the day and night." Compl. ¶ 6.

37. Plaintiff further alleges that every month, Microsoft's "bombardment" of cell phone users with SMS text messages commences on at least "hundreds or thousands more wireless subscribers." Compl. ¶ 19.

38. Plaintiff alleges that he is typical of the proposed class members, Compl. ¶ 34, and that he "receiv[ed] well over one hundred text messages" sent by Windows Live, Compl. ¶ 23.

39. The "mobile content" of which Plaintiff complains allegedly includes unsolicited commercial electronic mail. For example, Plaintiff provides an example of commercial electronic mail allegedly forwarded by Windows Live to his cell phone, containing an advertisement for "amateur night at da soft touch [sic]." Compl. ¶ 24.

40. In addition, Plaintiff describes the commercial nature of "mobile content" that he claims Microsoft "inserted" on cell phones when he alleges that "Defendant has received and retains money belonging to Plaintiff and the Class resulting from its billing and collecting of a significant sum in unauthorized mobile content charges, *advertising revenue* and related earnings." Compl. ¶ 43 (incorporated by reference in Count V) (emphasis added).

41. 720 ILCS 5/16D-3(b)(4) provides for specific monetary relief where the violation of 720 ILCS 5/16D-3 arises from the transmission of unsolicited bulk electronic mail. In such cases:

> the injured person, other than an electronic mail service provider, may also recover attorney's fees and costs, and may elect, in lieu of actual damages, to recover the lesser of $10 for each and every unsolicited bulk electronic mail message transmitted in violation of this Section, or $25,000 per day.

720 ILCS 5/16D-3(b)(4).

42. As described in paragraph 26, above, Microsoft estimates that Windows Live transmitted 4,993,044 SMS text messages to holders of wireless telephone numbers in the United States who allegedly did not authorize receipt of the messages.

-9-

43. Plaintiff asserts Count V on behalf of the proposed Illinois sub-class. Count V at caption.

44. According to the United States Census Bureau, in 2006, the population of Illinois was estimated to be 4.28% of the population of the United States. *See* http://www.census.gov/compendia/statab/tables/08s0012.pdf (last visited Sept. 10, 2008).

45. It is reasonable to estimate the number of SMS text messages that Windows Live transmitted to the wireless telephone numbers of Illinois residents who allegedly did not authorize receipt to be 4.28% of the estimated 4,993,044 SMS text messages transmitted by Windows Live to holders of cell phone numbers who allegedly did not authorize receipt throughout the United States. The estimated number of such messages allegedly transmitted to Illinois residents is therefore 213,702.

46. Under 720 ILCS 5/16D-3(b)(4), each alleged class member would be eligible to recover $10 for each unauthorized message, which in the aggregate would amount to $2,137,020.00.

47. The remedy of $10 per message provided under 720 ILCS 5/16D-3(b)(4) is elective and "in lieu of actual damages." Because that remedy would preclude the members of the proposed Illinois sub-class from recovering actual damages, the nationwide damages figure of $748,956.60 set forth in paragraph 27 above would need to be reduced by 4.28%, or $32,055.34, to reflect the proportion of Illinois residents in the United States population. When that adjustment is made, the estimated actual damages recoverable for the claims of non-Illinois class members is $716,901.26.

48. The sum of the estimated damages recoverable by the Illinois sub-class and the non-Illinois class members is thus $2,853,921.26.

49. As noted in paragraphs 28 and 29 above, Plaintiff's also seeks to recover exemplary damages for himself and the proposed class, and exemplary damages are recoverable on claims for tortious interference with contract.

50. If punitive damages of $2,146,078.75 were awarded in addition to the damages of $2,853,921.26 described in paragraph 48 above, the $5 million amount in controversy requirement under CAFA would be satisfied.

51. An award of punitive damages of $2,146,078.75 would be 2.99 times the estimated direct damages of $716,901.26 on Plaintiff's tortious interference claim as described in paragraph 47 above, and would not be so large that it would be beyond a legal certainty that Plaintiff could never recover them.

52. Plaintiff has therefore alleged an amount in controversy that exceeds $5 million, exclusive of interest and costs.

53. For all of the foregoing reasons, this action is properly removed to this Court pursuant to CAFA.

## BASIS OF FEDERAL JURISDICTION UNDER COMMUNICATIONS DECENCY ACT

54. This action is also removable to this Court because federal question jurisdiction, 28 U.S.C. § 1331, exists over Plaintiff's claims, all of which are pre-empted by section 230 of the Communications Decency Act of 1996 (the "CDA"), 47 U.S.C. § 230.

55. In enacting the CDA, Congress sought to encourage progress in the accessibility and scope of Internet technologies, as well as the growth of "interactive computer services" such as those provided by Windows Live. Specifically, Congress provided that "it is the policy of the United States (1) to promote the continued development of the Internet and other interactive computer services and other interactive media; [and] (2) to preserve the vibrant and competitive

free market that presently exists for the Internet and other interactive computer services, unfettered by Federal or State regulation." 47 U.S.C. §§ 230(b)(1) & (2).

56. To advance these objectives, the CDA provides that "[n]o provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider." 47 U.S.C. § 230(c)(1). To implement this statutory immunity, Congress included a broad pre-emption provision in which it declared, *inter alia*, that "[n]o cause of action may be brought and no liability may be imposed under any State or local law that is inconsistent with this section." 47 U.S.C. § 230(e)(3).

57. The CDA defines an "interactive computer service" as "any information service, system, or access software provider that provides or enables computer access by multiple users to a computer server, including specifically a service or system that provides access to the Internet and such systems operated or services offered by libraries or educational institutions." 47 U.S.C. § 230(f)(2).

58. Windows Live is an interactive computer service within the meaning of the CDA.

59. All of Plaintiff's claims seek to hold Microsoft liable for alleged injuries due to the forwarding, by Windows Live, of "communications received by the [Windows Live] account . . . to users' wireless telephones as text messages ("SMS" or "text" messages)." Compl. ¶ 3. Therefore Plaintiff's claims, regardless of how they are denominated, all seek recovery for Windows Live's activities as a conduit for allegedly unwanted content created by others. *See* Compl. ¶ 5 ("email messages received from a particular source, or email messages containing certain names or keywords, are transmitted automatically as text messages from the user's Windows Live email account to the telephone number inputted by the user").

60. Under section 230(c)(1) of the CDA, *supra*, Microsoft is immune from liability for forwarding, as SMS or text messages, information created by others and received in Windows Live accounts. *See, e.g., Chicago Lawyers' Comm. for Civil Rights Under Law, Inc. v. Craigslist, Inc.*, 519 F.3d 666, 671-72 (7th Cir. 2008) (recognizing broad exemption of information service providers under section 230(c)(1) from liability for information authored by others, and affirming dismissal of Fair Housing Act claim); *see also Green v. America Online*, 318 F.3d 465, 471 (3d Cir. 2003) ("By its terms, § 230 provides immunity to AOL as a publisher or speaker of information originating from another information content provider. The provision 'precludes courts from entertaining claims that would place a computer service provider in a publisher's role,' and therefore bars 'lawsuits seeking to hold a service provider liable for its exercise of a publisher's traditional editorial functions – such as deciding whether to publish, *withdraw*, postpone, or alter content.'") (quoting *Zeran v. America Online, Inc.*, 129 F.3d 327, 330 (4th Cir.1997)) (emphasis added); *Ben Ezra, Weinstein & Co. v. America Online, Inc.*, 206 F.3d 980, 986 (10th Cir. 2000) (immunity from liability for negligence); *Zeran*, 129 F.3d at 330 (same); *Doe v. MySpace, Inc.*, 474 F. Supp. 2d 843, 849-50 (W.D. Tex. 2007) (immunity from liability for negligence and gross negligence); *Beyond Sys., Inc. v. Keynetics, Inc.*, 422 F. Supp. 2d 523, 536 (D. Md. 2006) (immunity from liability under Maryland Commercial Electronic Mail Act); *Barnes v. Yahoo!, Inc.*, No. Civ. 05-926-AA, 2005 WL 3005602, at *4 (D. Or. Nov. 8, 2005) (immunity from liability for negligence).

61. Recovery, on any of Plaintiff's claims, for Microsoft's role as a conduit for the forwarding of information provided by others would therefore be inconsistent with the statutory immunity from liability under section 230(c)(1) of the CDA.

62. Because the CDA provides that "[n]o cause of action may be brought and no liability may be imposed under any State or local law that is inconsistent with [section 230]," 47 U.S.C. § 230(e)(3), and liability on any of Plaintiff's claims would be inconsistent with section 230 of the CDA, Plaintiff's claims are completely pre-empted by the CDA and this Court accordingly has federal question jurisdiction over Plaintiff's Complaint. *See, e.g., Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 63-64 (1987); *Bastien v. AT&T Wireless Servs., Inc.*, 205 F.3d 983, 986-87, 989 (7th Cir. 2000).

63. Microsoft has demonstrated above that all of Plaintiff's claims are pre-empted under the CDA. However, to the extent that the Court determines that some but not all of the claims are pre-empted, there is still federal jurisdiction over the entire action under 28 U.S.C. § 1367(a), providing for supplemental jurisdiction.

64. 28 U.S.C § 1367(a) states that, "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."

65. Because all of Plaintiff's claims arise out of the same facts and are part of the same case or controversy, only one Count of Plaintiff's Complaint need be pre-empted for there to be federal jurisdiction over the entire Complaint pursuant to section 1367(a). *See, e.g., Gossmeyer v. McDonald*, 128 F.3d 481, 488 (7th Cir. 1997) (finding that state-law defamation claim was properly removed under the district court's supplemental jurisdiction).

## BASIS OF FEDERAL JURISDICTION UNDER CAN-SPAM ACT

66. This action is also removable to this Court because federal question jurisdiction, 28 U.S.C. § 1331, exists over Plaintiff's claim under 720 ILCS 5/16D-3, *see* Compl. at Count V,

¶¶ 55-61, which is pre-empted by section 8(b) of the CAN-SPAM Act of 2003 (the "CAN-SPAM Act"), 15 U.S.C. § 7707(b).

    67. In enacting the CAN-SPAM Act, Congress found, *inter alia*, that:

> (1) Electronic mail has become an extremely important and popular means of communication, relied on by millions of Americans on a daily basis for personal and commercial purposes. Its low cost and global reach make it extremely convenient and efficient, and offer unique opportunities for the development and growth of frictionless commerce.

*  *  *

> (6) Electronic mail has become an extremely important and popular means of communication, relied on by millions of Americans on a daily basis for personal and commercial purposes. Its low cost and global reach make it extremely convenient and efficient, and offer unique opportunities for the development and growth of frictionless commerce.

*  *  *

[and]

> (11) Many States have enacted legislation intended to regulate or reduce unsolicited commercial electronic mail, but these statutes impose different standards and requirements. As a result, they do not appear to have been successful in addressing the problems associated with unsolicited commercial electronic mail, in part because, since an electronic mail address does not specify a geographic location, it can be extremely difficult for law-abiding businesses to know with which of these disparate statutes they are required to comply.

15 U.S.C. § 7701.

    68. In Count V, Plaintiff purports to assert a claim for "computer tampering," alleging that Microsoft violated "720 ILCS 5/16D-3(a)(4) by knowingly participating in and/or facilitating the insertion of mobile content into class members' cellular phones without the permission of the cellular phones' respective owners, knowing and/or having reason to believe

that the insertion of the unauthorized mobile content will or may cause loss to the users of that cellular phone." Compl. ¶ 58.

69. As described in his Complaint, the "mobile content" of which Plaintiff complains includes unsolicited commercial electronic mail. For example, Plaintiff provides an example of commercial electronic mail allegedly forwarded by Windows Live to his cell phone, containing an advertisement for "amateur night at da soft touch [sic]." Compl. ¶ 24.

70. Plaintiff also describes the commercial nature of "mobile content" that he claims Microsoft "inserted" on cell phones when he alleges that "Defendant and/or its partners levy additional fees for mobile content that appears on consumers' cellular telephone bills as separate line item charges." Compl. ¶ 16.

71. In addition, Plaintiff describes the commercial nature of "mobile content" that he claims Microsoft "inserted" on cell phones when he alleges that "Defendant has received and retains money belonging to Plaintiff and the Class resulting from its billing and collecting of a significant sum in unauthorized mobile content charges, *advertising revenue* and related earnings." Compl. ¶ 43 (incorporated by reference in Count V) (emphasis added).

72. By its express terms, the CAN-SPAM Act:

> supersedes any statute, regulation, or rule of a State or political subdivision of a State that expressly regulates the use of electronic mail to send commercial messages, except to the extent that any such statute, regulation, or rule prohibits falsity or deception in any portion of a commercial electronic mail message or information attached thereto.

15 U.S.C. § 7707(b)(1).

73. 720 ILCS 5/16D-3(b)(4) provides for specific monetary relief where the violation of 720 ILCS 5/16D-3 arises from the transmission of unsolicited bulk electronic mail. 720 ILCS 5/16D-3 is therefore a statute "that expressly regulates the use of electronic mail to send

commercial messages" within the meaning of 15 U.S.C. § 7707(b)(1), and the CAN-SPAM Act completely pre-empts Plaintiff's claim for violation of 720 ILCS 5/16D-3. *See, e.g., Omega World Travel, Inc. v. Mummagraphics, Inc.*, 469 F.3d 348, 353-56 (4th Cir. 2006) (CAN-SPAM Act pre-empts Oklahoma statute regulating electronic mail messages); *Facebook, Inc. v. ConnectU LLC*, 489 F. Supp. 2d 1087, 1094 (N.D. Cal. 2007) (CAN-SPAM Act pre-empts California statute regulating electronic mail).

74. Because Plaintiff's claim for violation of 720 ILCS 5/16D-3 is completely pre-empted by the CAN-SPAM Act, this Court accordingly has federal question jurisdiction over Count V. *See, e.g., Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 63-64 (1987); *Bastien v. AT&T Wireless Servs., Inc.*, 205 F.3d 983, 986-87, 989. (7th Cir. 2000).

75. As described above in paragraphs 62-64, because Count V is pre-empted by the CAN-SPAM Act, this Court has supplemental jurisdiction over the remainder of Plaintiff's claims.

For all of the foregoing reasons, this Action is properly removed to this Court.

September 10, 2008

Respectfully submitted,
MICROSOFT CORPORATION

By: /s/ Richard F. O'Malley, Jr.

Richard F. O'Malley, Jr.
Ruchi Verma
One South Dearborn
Chicago, Illinois 60603
Tel. (312) 853-7000
Fax: (312) 853-7036

## CERTIFICATE OF SERVICE

Ruchi Verma, an attorney, certifies that she caused a copy of the foregoing Notice of Removal to be served upon counsel listed below by U.S. Mail on September 10, 2008:

Jay Edelson
Myles McGuire
Steven Lezell
KamberEdelson, LLC
53 West Jackson Boulevard, Suite 550
Chicago, Illinois 60604

/s/ Ruchi Verma
Ruchi Verma